|   |   |   |
|---|---|---|
| 1 | **UNITED STATES DISTRICT COURT** | |
| 2 | **EASTERN DISTRICT OF CALIFORNIA** | |

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 1:13-cr-0003-AWI** |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255** |
| **CHRISTOPHER ROBINETTE,** | |
| Defendant. | (Doc. No. 71) |

## I. Introduction

In August 2014 the Court sentenced and entered judgment against Defendant Christopher Robinette for sexual exploitation of a minor and transportation of a minor with intent to engage in sexual activity. Robinette now petitions the Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Court will deny Robinette's petition for being untimely.

## II. Facts

Robinette pled guilty to eight counts of sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) and (e) and one count of transportation of a minor with intent to engage in sexual activity in violation of 18 U.S.C. § 2423(a). See Doc. No. 51; Doc. No. 52. The Court then sentenced Robinette on August 25, 2014, and entered judgment against Robinette on August 29, 2014. See Doc. No. 65; Doc. No. 67.

According to Robinette, at or around the time of the sentencing, Robinette's trial attorney, John Balazs, told Robinette that there were multiple issues that were appropriate for appeal. Robinette responded by telling Balazs that Robinette wanted to appeal. According to Robinette, Robinette believed at that time that Balazs would do "whatever needed to be done to effect [Robinette's] opportunity to appeal." Doc. No. 71 at 23.

In a criminal case, a notice of appeal must be filed within fourteen days of the district court's entry of judgment. See Fed. R. App. P. 4(b)(1)(A); Fed. R. App. 26(a). Therefore, the deadline for Robinette to file his notice of appeal was on September 12, 2014. That deadline passed without a notice of appeal being filed, and an appeal has not been filed since. Robinette asserts that he was unaware from the time of his sentencing until December 2017 that no appeal was filed.

Robinette asserts that after his sentencing he "remained in transit" until arriving at the prison in Forrest City, Arkansas on November 14, 2014. Robinette asserts that he was subsequently placed in the Petersburg Medium prison in Hopewell, Virginia on April 21, 2015.

Robinette asserts that in or around April 2015, if not earlier, he and his mother began diligently investigating what Robinette refers to as "the suspicious circumstances and cover up of his case." Doc. No. 75 at 9. Specifically, Robinette asserts that his investigation initially focused on "the suspicious circumstances surrounding [his] bizarre arrest at [his] home in Amsterdam, Netherlands, and the even more bizarre extradition to the United States." Id. at 25.

Robinette asserts that his investigation was obstructed in multiple ways. According to Robinette, those ways included (1) the prison law libraries lacking adequate legal research training materials, law books, and materials to help Robinette draft court filings; (2) the prisons limiting Robinette "to a meager 300 minutes of telephone time per month" or an "average of 10 minutes per day," which was "[h]ardly enough time to discuss the type and magnitude of help that [he] needed," id. at 11; (3) the prisons monitoring Robinette's prison phone calls; (4) the prisons denying internet access to Robinette; (5) the prisons denying Robinette email access because prison policy barred sex offenders from email access; and (6) the Arkansas prison placing Robinette in a special housing unit with a twenty-three hour lockdown period that allowed Robinette only one fifteen-minute phone call per month.

Robinette asserts that despite these obstacles, Robinette and his mother diligently continued their investigation through February 2018. Robinette asserts that the investigation consisted of (1) Robinette and his mother regularly communicated with each other via postal mail and occasionally met in person at the prison to discuss their investigative findings, queries, and

2

strategy; (2) at Robinette's direction, Robinette's mother repeatedly traveled to Amsterdam to learn about the circumstances of Robinette's arrest and extradition, amongst other matters; (3) Robinette completed a twelve-month paralegal program while in prison to learn how to "fight his case" from prison, id. at 12; and (4) Robinette and his mother performed extensive and tedious legal research and fact investigation, some of which was obstructed by the government and other key players.

Robinette asserts that in June 2017 he sent a letter to Balazs asking for an update on his appeal. According to Robinette, Balazs responded to him in August 2017, but Balazs did not mention an appeal. Robinette asserts that in November 2017 Robinette sent a letter to the United States Attorney's Office in Sacramento, California, requesting information about his case. Robinette asserts that the United States Attorney's Office responded to him in December 2017, informing Robinette that an appeal had not been filed. According to Robinette, this was the first time that Robinette learned that an appeal had not been filed.

Robinette then filed his section 2255 petition on February 12, 2018, which was nearly three-and-a-half years after the Court entered judgment against Robinette in August 2014. In his petition, Robinette presented six grounds on which he believed that he was being held in custody in violation of the Constitution and laws of the United States: four different theories of ineffective assistance of counsel (grounds one, two, three, and six), including one theory related to Balazs' alleged failure to timely file an appeal; one theory of prosecutorial misconduct (ground four); and one theory of a Fourth Amendment violation (ground five).

The Court reviewed Robinette's petition and questioned whether the petition should be dismissed for not being filed within section 2255's one-year period of limitation. See 28 U.S.C. § 2255(f) (imposing a one-year "period of limitation" for filing a section 2255 petition). Accordingly, the Court issued an order for Robinette to show cause why his petition should not be dismissed as untimely. See Doc. No. 72. In the order to show cause, the Court referenced the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides a one-year period of limitation to file a petition to vacate, set aside, or correct a sentence. The Court also

quoted 28 U.S.C. § 2255(f), which states that the one-year period of limitation is to be calculated from the latest of the following applicable dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of [federal law] is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). The Court stated that there was no basis in Robinette's petition to calculate the one-year period of limitation from the starting dates identified in subsections (2), (3), and (4). Therefore, the Court concluded that the starting date identified in subsection (1) was the only applicable starting date for calculating Robinette's one-year period of limitation. Doc. No. 72 at 3 ("The Court, having excluded all other possible starting points, concludes the first of the possible starting points for the running of the statute of limitations applies. Thus, the one-year statute of limitations on [Robinette's] right to file a motion for habeas review pursuant to Section 2255 began to run on the date that the judgement became final.").

The Court then analyzed subsection (1), noting that judgment had been entered against Robinette on August 29, 2014, and therefore the judgment became final in September 2014. The Court noted that in light of subsection (1)'s starting date, Robinette's one-year period of limitation expired roughly two-and-a-half years before Robinette filed his petition in February 2018. For this reason, the Court ordered Robinette to show cause within thirty days why his petition should not be dismissed for being untimely.

Robinette moved the Court an extra forty-five days to respond to the Court's order to show cause, arguing that he needed the extra time to "prepare and procure the . . . evidence of the

extraordinary circumstances' which caused delays in filing." Doc. No. 74.[1]  Then, on May 14, 2018, Robinette filed his response to the Court's order to show cause.  See Doc. No. 75. Robinette's response consisted of a twenty-two-page brief and sixty-three pages of exhibits, including Robinette's affidavit.  In the response, Robinette conceded that his section 2255 petition was filed after the one-year period of limitation.  But Robinette argued that the period of limitation should be equitably tolled because he diligently pursued his rights under section 2255 and his failure to timely file his petition was caused by extraordinary circumstances.  The specifics of Robinette's equitable tolling argument are discussed infra.

## III.  Discussion

**1.  Equitable tolling of section 2255's one-year period of limitation.**

AEDPA's period of limitation is subject to equitable tolling in appropriate cases.  Holland v. Fla., 560 U.S. 631, 645 (2010).  "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." Valverde v. Stinson, 224 F.3d 129, 133 (2d Cir. 2000).  "[T]he threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule."  Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (citations omitted).

"To receive equitable tolling, a petitioner bears the burden of showing '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009) (emphasis added) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).

**A.  Extraordinary circumstances.**

In order for section 2255's period of limitation to be equitably tolled, the petitioner must show that there were "extraordinary circumstances [that] were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time."  Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009) (emphasis added) (citations and internal quotations

---

[1] The Court will grant Robinette's motion for an extra forty-five days to respond to the Court's order to show cause.

omitted). Robinette argues that there were extraordinary circumstances that caused his petition to be untimely and made it impossible for him to file the petition on time.

First, Robinette suggests that his transfers from one prison to another constituted an extraordinary circumstance. According to Robinette, after the sentencing Robinette was placed in a prison in Forrest City, Arkansas on November 14, 2014, and then placed in the Petersburg Medium prison in Hopewell, Virginia on April 21, 2015. But Robinette failed to articulate how, exactly, these two transfers during the limitation period caused his untimeliness or made it impossible to timely file his petition. These facts do not demonstrate an extraordinary circumstance that warrants equitable tolling. Cf., Lott v. Mueller, 304 F.3d 918, 924 (9th Cir. 2002) (stating that where a petitioner was denied access to his legal files for eighty-two days due to prison transfers, extraordinary circumstances might exist).

Second, Robinette suggests that the prisons' limitations on his ability to research for and prepare his petition constituted an extraordinary circumstance. As stated supra, those conditions according to Robinette included (1) the prison law libraries lacking adequate legal research training materials, law books, and materials to help Robinette draft court filings; (2) the prisons limiting Robinette "to a meager 300 minutes of telephone time per month" or an "average of 10 minutes per day," which was "[h]ardly enough time to discuss the type and magnitude of help that [he] needed," Doc. No. 75 at 11; (3) the prisons monitoring Robinette's prison phone calls; (4) the prisons denying internet access to Robinette; (5) the prisons denying Robinette email access because prison policy barred sex offenders from email access; and (6) the Arkansas prison placing Robinette in a special housing unit with a twenty-three hour lockdown period that allowed Robinette only one fifteen-minute phone call per month.

These conditions do not demonstrate an extraordinary circumstance that warrants equitable tolling. For example, Robinette has not demonstrated that he was deprived of complete access to his legal file. Cf., Ramirez, 571 F.3d at 998 ("[A] complete lack of access to a legal file may constitute an extraordinary circumstance, and that it is unrealistic to expect a habeas petitioner to prepare and file a meaningful petition on his own within the limitations period without access to his legal file."). Robinette has not demonstrated that the alleged inadequacies and shortcomings of

the prison law libraries significantly "hindered his efforts to pursue a legal claim." See Lewis v. Casey, 518 U.S. 343, 351 (1996) ("[T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."); Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001) (stating that lack of access to library materials does not automatically qualify as grounds for equitable tolling). Robinette has not demonstrated that the law libraries lacked the text of the AEDPA, which provides the law on AEDPA's one-year period of limitation. See Mendoza v. Carey, 449 F.3d 1065, 1069 (9th Cir. 2006) (citing Whalem/Hunt v. Early, 233 F.3d 1146, 1149 (9th Cir. 2000) (Tashima, J., concurring)) (recognizing that the Ninth Circuit has held that the unavailability of a copy of the AEDPA in a prison law library could, but did not necessarily, constitute grounds for equitable tolling). Robinette has not demonstrated that he was allowed access to the library only a short time before, such as two days before, his petition filing deadline. See Sossa v. Diaz, 729 F.3d 1225, 1236 (9th Cir. 2013). Robinette has not demonstrated that he was kept out of the library for prolonged periods of time despite his requests for access. See id.

Instead, Robinette has only demonstrated that his ability to research for and prepare his petition in prison was subject to ordinary prison circumstances. See Ramirez, 571 F.3d at 998 ("Ordinary prison limitations on [the petitioner's] access to the law library and copier [are] neither 'extraordinary' nor made it 'impossible' for [the petitioner to file the] petition in a timely manner."); id. ("[S]imply because [the petitioner] remained in administrative segregation and had limited access to the law library and copy machine" does not give rise to extraordinary circumstances"); see also Chaffer v. Prosper, 592 F.3d 1046, 1049 (9th Cir. 2010) ("[Petitioner] alleges that his pro se status, a prison library that was missing a handful of reporter volumes, and reliance on helpers who were transferred or too busy to attend to his petitions justified the delay; however, these circumstances are hardly extraordinary given the vicissitudes of prison life, and there is no indication in the record that they made it 'impossible' for him to file on time."); Norwood v. Lockyer, 390 F. App'x 762, 763 (9th Cir. 2010) (stating that "limited law library access, being moved to different cells, temporary lockdowns" do not "show circumstances that are out of the ordinary for prison life or that would have made it 'impossible' to file on time").

7

Accordingly, Robinette's prison and law library conditions do not demonstrate an extraordinary circumstance that warrants equitable tolling.

In sum, the Court concludes that Robinette has not demonstrated an extraordinary circumstance that warrants equitable tolling.

### B.     Reasonable diligence.

The period of limitations will not be equitably tolled if, after the beginning of extraordinary circumstances that caused the untimely filing, the petitioner did not exercise reasonable diligence in attempting to file the petition. Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (cited by Spitsyn v. Moore, 345 F.3d 796, 802 (9th Cir. 2003), as amended (Nov. 3, 2003)). Although the Court has already concluded that Robinette has not demonstrated an extraordinary circumstance that warrants equitable tolling, the Court will nonetheless address Robinette's due diligence argument.

Robinette argues that he diligently pursued his rights under section 2255 because from at least April 2015 through February 2018, Robinette diligently investigated the facts and researched the law underlying his petition. As stated supra, the following acts according to Robinette demonstrate his reasonable diligence: (1) Robinette and his mother regularly communicated with each other via postal mail and occasionally met in person at the prison to discuss their investigative findings, queries, and strategy; (2) at Robinette's direction, Robinette's mother repeatedly traveled to Amsterdam to learn about the circumstances of Robinette's arrest and extradition, amongst other matters; (3) Robinette completed a twelve-month paralegal program while in prison to learn how to "fight his case" from prison, Doc. No. 75 at 12; and (4) Robinette and his mother performed extensive and tedious legal research and fact investigation, some of which was obstructed by the government and other key players. Robinette also suggests that he was diligent in pursuing his section 2255 rights because he was unaware until December 2017 that an appeal had not been filed by Balazs, and Robinette filed his section 2255 petition within three months of learning that fact.

For at least two reasons the Court concludes that Robinette has not demonstrated reasonable diligence that warrants equitable tolling. First, Robinette implicitly suggests that he

could file petition only after he completed his nearly three-year-long investigation. The Court disagrees. AEDPA's one-year limitation period was sufficient time for Robinette to prepare his petition. This is because many of the facts underlying the petition were known or could have been known by Robinette during the one-year period of limitation. For example, during the one-year period of limitation, Robinette knew or could have known of the facts related to Balazs' alleged failure to achieve a rudimentary understanding of the law and alleged failure to investigate and prepare for Robinette's defense (which form the basis of grounds two and three of Robinette's petition). Additionally, during the one-year period of limitation, Robinette knew or could have known of the alleged facts related to Balazs' failure to make certain challenges at trial (which form the basis of grounds five and six of Robinette's petition). See United States v. Battles, 362 F.3d 1195, 1198 (9th Cir. 2004) ("Surely due diligence requires that [the petitioner] at least consult his own memory of the trial proceedings. His decision not to do so does not bespeak due diligence. [The petitioner's] current [section 2255] claims are about happenings at the time of his conviction — the failure of counsel to lodge an objection at the time of the government's closing argument, and counsel's refusal to allow [the petitioner] to participate in a presentence investigation. There is nothing new about those."). The same is true for the petition's facts concerning alleged prosecutorial misconduct (which form the basis of ground four of Robinette's petition). Yet, Robinette waited nearly three-and-a-half years to present these facts and arguments to the Court in his petition, and that does not constitute reasonable diligence.

Second, as for the fact that Robinette was unaware from the time of his sentencing in August 2014 until December 2017 that no appeal had been filed, this argument also demonstrates a lack of reasonable diligence by Robinette. It appears that Robinette could have inquired into the status of his appeal (or lack thereof) at nearly any time during the one-year period of limitation, but Robinette did not do so. Robinette failed to explain to the Court why he waited roughly three years to inquire into the matter. These facts demonstrate that Robinette did not exercise reasonable diligence in advancing his argument of ineffective assistance of counsel concerning his appeal rights (which forms the basis of ground one of Robinette's petition).

In sum, the Court concludes that Robinette has not demonstrated reasonable diligence that warrants equitable tolling.

**2.  Certificate of appealability.**

A petitioner cannot appeal from the denial or dismissal of a section 2255 petition unless the petitioner first obtains a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard when the Court dismisses the section 2255 petition (or claims within the petition) on procedural grounds, the petitioner must show that reasonable jurists would find debatable (1) whether the Court was correct in its procedural ruling and (2) whether the petition states a valid claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, the Court concludes that reasonable jurists would not find it debatable that the Court was correct in its procedural ruling that Robinette's petition was untimely. Therefore, the Court declines to issue a certificate of appealability.

# ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Robinette's amended motion for an extra forty-five days to respond to the order to show cause (Doc. No. 74) is GRANTED;
2. Robinette's section 2255 motion to vacate, set aside, or correct sentence (Doc. No. 71) is DENIED;
3. The Court DECLINES to issue a certificate of appealability; and
4. The Clerk of Court is directed to CLOSE this case.

IT IS SO ORDERED.

Dated:  June 27, 2019

_____
SENIOR DISTRICT JUDGE